IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

TAMMY V.J. GREEN-PRUITT, )
)
Plaintiff, )
)
v. ) Case No. CIV-09-259-KEW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

**OPINION AND ORDER**

Plaintiff Tammy V.J. Green-Pruitt (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on June 26, 1963 and was 43 years old at the time of the ALJ's decision. She completed her education through the eighth grade. Claimant has engaged in past relevant work as a housekeeper and cook. Claimant alleges an inability to work beginning December 1, 2004 due to back problems, arthritis of the

ankle and knee, neck pain, shoulder pain, numbness of the hands, obesity, depression, and anxiety.

## Procedural History

On March 3, 2005, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications for benefits were denied initially and upon reconsideration. On June 25, 2007, Claimant appeared at a hearing before ALJ John Volz in Tulsa, Oklahoma. By decision dated August 3, 2007, the ALJ found Claimant was not disabled at any time through the date of the decision. On May 18, 2009, the Appeals Council denied Claimant's request for review. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found Claimant retained the residual functional capacity ("RFC") to perform work at a sedentary level with limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error requiring reversal in

(1) failing to perform a proper step three analysis; (2) failing to perform a proper evaluation at step five; (3) failing to properly evaluate the opinions of Claimant's treating physicians; and (4) failing to perform a proper credibility analysis.

### Step Three Evaluation

Claimant contends the ALJ failed to properly consider Claimant's obesity in conjunction with other impairments in his step five analysis. In his decision, the ALJ found Claimant to be morbidly obese at 5'9" and 284 pounds. (Tr. 25). He did not, however, determine obesity to be among Claimant's severe impairments. (Tr. 22).

An ALJ is required to consider "any additional and cumulative effects" obesity may have upon other conditions from which a claimant suffers, recognizing that obesity combined with other impairments may increase the severity of the condition. Soc. Sec. R. 02-1p; 20 C.F.R. Pt. 405, Subpt. P, App. 1 § 1.00(Q)(combined effect with musculoskeletal impairments). "[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." Id. "Obesity in combination with another impairment may or may not increase the severity or

5

functional limitations of the other impairment." Each case is evaluated on information in the case record. Id.

Here, Claimant contends the ALJ should have considered her obesity in conjunction with knee, ankle, and back pain as well as her depression. The ALJ did not find Claimant's knee and ankle problems to be severe impairments and, therefore, he was not required to discuss Claimant's obesity in connection with these less than severe problems. He did find Claimant suffered from a back impairment and, therefore, he must "assess the effects of Claimant's obesity in conjunction with her back problem and 'explain how [h]e reached [his] conclusions on whether obesity caused any physical or mental limitations.'" Baker v. Barnhart, 2003 WL 22905238, 14 (10th Cir.(Okla.)); Soc. Sec. R. 02-01p.

The same is also true of Claimant's depression. On remand, the ALJ shall also evaluate Claimant's mental impairment in combination with her obesity. Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996).

### Step Five Analysis

Claimant next contends the ALJ failed to explain the definition of sedentary work to the vocational expert which allowed the expert to draw his own conclusions as to the ALJ's meaning. In his questioning, the ALJ stated

6

> ALJ: I'll give you a hypothetical claimant of this claimant's age, educational background who would be limited to a sedentary range or work as that term is used in the Social Security Administration's regulations. Also confined to simple, uncomplicated tasks with routine supervision. Would there be jobs in the regional or national economy that such a person could acquire?
>
> VE: Yes, Your Honor. Such a hypothetical individual would be able to perform a full range of unskilled, sedentary work. . . .

Claimant argues the ALJ "stated that Claimant could perform sedentary work, but failed to state what the requirements for sedentary work actually were." As a result, Claimant states the ALJ permitted the vocational expert to make a decision in his own head without explanation. Without doubt, the ALJ can only rely upon a vocational expert's testimony when a claimant's impairments are adequately represented in his hypothetical inquiries. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993). Use of the term "sedentary work" as is defined by the Social Security regulations in questioning a vocational expert, however, is not erroneous. Vocational experts utilize these terms routinely in their testimony in identifying the type of jobs an individual claimant can perform.

Claimant also contends the ALJ should have included a limitation for hand use in his questioning of the vocational expert. Claimant references several medical records where Claimant allegedly has been found to have decreased grip strength and numbness in the hands. However, many of these references include

only claimed numbness in the right arm. One such record indicates "pt. won't use fingers for grip but finger extension is intact." (Tr. 200). Additionally, an examination by Dr. Glenn C. Stow on August 23, 2005 found Claimant to have no restrictions in the use of her hands and wrists. (Tr. 264-65). This Court finds no error in the failure of the ALJ to find Claimant's hand limitations, such as they are, non-severe.

Claimant next asserts that ALJ should have included a shoulder limitations in his questioning of the vocational expert and RFC evaluation. Decreased range of motion was noted in the right shoulder in November of 2006 and April of 2007. (Tr. 360, 379). None of these records, however, indicate Claimant has a limitation in her ability to reach - the condition which Claimant suggests should have been included in the questioning of the vocational expert and in the RFC based upon the requirements of the jobs identified by the vocational expert which Claimant could perform. As a result, the ALJ did not commit error in not including this limitation.

### Treating Physicians' Opinions

Claimant contends the ALJ failed to properly evaluate and weigh the opinions of Dr. Adel Maloti, Dr. Ashock Kache, and Dr. Vanessa Werlla. Dr. Maloti attended Claimant in February of 2004, diagnosing Claimant with chronic back pain due to a herniated disc, and migraine headaches. (Tr. 358-59). While it is questionable

how this opinion would affect the ultimate determination of Claimant's limitations since the ALJ already determined Claimant suffered from chronic back pain and Dr. Maloti's diagnosis was reached without testing, the ALJ is required to consider all medical opinions. 20 C.F.R. § 416.927(d). Since the ALJ did not recognize Dr. Maloti's opinion at all in his decision, he must do so on remand. The weight afforded the opinion rests with the ALJ.

The ALJ did consider the opinions of Dr. Kache in this decision. Dr. Kache completed a Residual Functional Capacity to Do Work Related Activities form with regard to Claimant on June 7, 2007. He determined Claimant could sit and stand for less than 1 hour at a time in an 8 hour workday, walk for 10 minutes at a time in an 8 hour workday, sit for 3 hours in an 8 hour workday, and stand and walk for one hour each in an 8 hour workday. He further concluded Claimant could lift and carry up to 5 pounds frequently. Dr. Kache limited Claimant to no pushing and pulling with her legs and feet, and no repetitive use of her hands. She could not bend squat, crawl and only occasionally climb, reach, handle and finger. Concentration was found to be markedly limited and Claimant's condition would interfere with consistent pace of production. Claimant would also be distracted from pain and would be absent from work more than three times per month. (Tr. 381-83).

The ALJ gave Dr. Kache's opinion less than controlling weight because his opinion is "inconsistent with an entry from his January

9

11, 2007 progress note. . . . In the note, he writes that Ms. Green has been busy helping take care of both her daughter's new born(sic) and 7 other children as well. The Administrative Law Judge believes that the caretaking of 8 children is more than the equivalent of working at most occupations in its physical and mental demands." (Tr. 27).

While anecdotally this Court might agree with the reasoning set forth by the ALJ as to the level of work required to take care of 8 children, the medical record does not support the level of care she gave her children as it mentions only her "helping" with the care. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The

10

factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ could not reject the opinion of Dr. Kache or give it reduced weight based upon his perceived belief that caring for children rose to the level of an occupation. On remand, the ALJ shall determine the precise nature of her care of the 8 children

11

and whether that care contradicts Dr. Kache's opinions and conclusions.

Dr. Werlla, a mental health treating physician, completed a Mental Residual Functional Capacity Assessment form on Claimant on June 13, 2007. Dr. Werlla found marked limitations in several areas and severe limitations in others. (Tr. 405-06). She concluded Claimant "should avoid work involving complex instructions or severe work pressures. Simple work may still be limited or difficult." (Tr. 408). The ALJ concluded Dr. Werlla's opinion was "exaggerated." In particular, the "severe" and "marked" limitations were not supported by clinical evidence. Instead, the ALJ relied upon the opinions of Dr. Gerald Ball, a consultative mental health examiner. (Tr. 27). The ALJ failed to follow the precepts of <u>Watkins</u> in setting forth the precise basis for failing to give Dr. Werlla's opinion any weight or for choosing to accept the findings of a consultative examiner over a treating physician. On remand, the ALJ shall make more detailed findings on the basis for this weighing.

### Credibility Evaluation

As a final issue, Claimant suggests the ALJ's credibility findings were flawed. The ALJ's discounting of Claimant's alleged limitations caused by her conditions consists of (1) inconsistencies in Claimant's testimony on the necessity for the use of a cane; and (2) Claimant's ability to care for her 8

12

children which belies the level of claimed limitation.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at

391.

As stated, the ALJ inadequately inquired into the level of Claimant's care of her 8 children. It is, therefore, error to include this as a basis for calling Claimant's credibility into question until the record is adequately developed on the matter. On remand, the ALJ shall re-evaluate Claimant's credibility.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

DATED this ____ day of September, 2010.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE